UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| MARK D. GLAUSER, | : | Bankruptcy No. 07-13165DWS |
| | : | |
| Debtor. | : | |

# MEMORANDUM OPINION

**BY: DIANE WEISS SIGMUND, Chief Bankruptcy Judge**

Before the Court is the Motion of Deutsche Bank National Trust Company ("Bank") to Dismiss (the "Motion") the Chapter 13 case of the debtor Mark Glauser ("Mark" and "Mark's Case). The Motion is inextricably related to proceedings in the case of Mark's wife, Jennifer Glauser ("Jennifer" and "Jennifer's Case"), which has been pending in this Court for over two years. An evidentiary hearing at which Mark testified was held. I also take judicial notice of the docket and written opinions issued in Jennifer's Case.[1]

---

[1] Fed.R.Evid. 201, incorporated in these proceedings by Fed.R.Bankr.P. 9017. See Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991); Levine v. Egidi, 1993 WL 69146, at *2 (N.D. Ill. 1993); In re Paolino, 1991 WL 284107, at *12 n. 19 (Bankr. E.D. Pa. 1991); see generally In re Indian Palms Associates, Ltd., 61 F.3d 197 (3d Cir. 1995). While a court may not take judicial notice *sua sponte* of facts contained in the debtor's file that are disputed, In re Augenbaugh, 125 F.2d 887 (3d Cir. 1942), it may take judicial notice of adjudicative facts "not subject to reasonable dispute ... [and] so long as it is not unfair to a party to do so and does not undermine the trial court's factfinding authority." In re Indian Palms Assoc., 61 F.3d 197, 205 (3d Cir. 1995) (*citing* Fed.R.Evid. 201(f) advisory committee note (1972 proposed rules)).
(continued...)

## BACKGROUND

On July 7, 2005 Jennifer filed a Chapter 13 case. Mark did not join in the petition although his income was devoted to performance of the Chapter 13 plan proposed by Jennifer.[2] Mark and Jennifer's incomes in this case are identical to the incomes disclosed in the Jennifer case.[3] Other than the $3,800 priority claim of the Internal Revenue Service, Bank, which holds a validly perfected mortgage on Mark and Jennifer's residence at 14 Bark Hollow Road, Horsham, Pennsylvania (the "Residence"), was the only creditor dealt with in Jennifer's Chapter 13 plans.

---

(...continued)
Moreover, "factual assertions in pleadings, which have not been superceded by amended pleadings, are judicial admissions against the party that made them. Larson v. Gross Bank, 204 B.R. 500, 502 (W.D. Tex. 1996) (statements in schedules). See also In re Musgrove, 187 B.R. 808 (Bankr. N.D. Ga. 1995) (same); In re Leonard, 151 B.R. 639 (Bankr. N.D.N.Y. 1992) (same).

[2] Initially Mark's monthly net income from his employment as assistant general manager of the Sporting Club in the amount of $2,950.43 was included. Case no. 05-19233, Doc. No. 7 (July 15, 2005). He then had a period of unemployment where his net income dropped to $1,995 (Id., Doc. No. 20 (December 7, 2005)). On January 25, 2006, his employment at Seventh Street Medical ("SSM") was disclosed with what appears to be an estimated net monthly income of $2,000 for work commencing Feb. 1, 2006. Id., Doc. 25. On May 2, 2006, that number was amended to $2,500 although based on the rounded figures is still apparently estimated. Id., Doc. 37.

[3] This may be a result of simply copying the last Schedule I and J filed in Jennifer's Case. I note that Jennifer's length of employment with Aetna and their children's ages remain the same notwithstanding the passage of 14 months between documentary filings. In light of the representation in Jennifer's Fourth Amended Plan (also made in the Second and Third Amended Plans) that payments of $606 would begin in June 2007 based on Mark's anticipated income from "his sales position which he began on February 1, 2006, in which his earnings have already increased substantially and there is a strong potential for additional increases," I can only conclude that his income is understated or the previously filed documents were erroneous.

On August 19, 2005 Jennifer and Mark filed an adversary proceeding in Jennifer's Case asserting their right to rescind the Bank's mortgage (the "Adversary Case"), and Jennifer took the position that as a result, she did not have to cure their prepetition mortgage arrears to the Bank under her Chapter 13 plan. Her initial monthly payments to the Chapter 13 trustee were $50, but were subsequently increased to $100 with a promise of future enhancement as a result of Mark's new position with SSM. See note 3 supra.

On June 7, 2006 Bank filed a motion for relief from stay ("First Relief Motion") contending that Jennifer had not made post-petition mortgage payments since the inception of the case. Id., Doc. No. 41. In a stipulation (the "Stipulation") in which she admitted post-petition arrears of $22,350.25, Jennifer was given an opportunity to cure over time according to a negotiated schedule which required a $5,000 initial payment and a double monthly payment equal to $2,637.44 until the arrears were paid. The Stipulation was approved by the Court on July 11, 2006. Doc. Nos. 41, 46, 52, 53. As part of that resolution Bank also withdrew its opposition to Jennifer's Fourth Amended Chapter 13 Plan (the "Plan") which was then confirmed on July 6, 2006.

On August 7, 2006 Bank filed a motion to dismiss or in the alternative for relief from stay ("Second Relief Motion") on the grounds that Jennifer was in default of the Stipulation. The Bank also alleged that it was induced to enter into the Stipulation and withdraw its opposition to plan confirmation by Jennifer and her counsel's misrepresentations regarding her ability to make the stipulated payments. At the evidentiary

hearing held on September 6, 2006,[4] it was established that Jennifer had defaulted under the Stipulation and that her resources to make the promised payments had been misrepresented. On September 19, 2006, an Order granting relief from stay accompanied by an 11-page Memorandum Opinion (the "Ruling") was entered. In re Glauser, 2006 WL 2847364 (Bankr. E.D. Pa. Sept. 19, 2006). The Ruling found that Jennifer was in default of the Stipulation by her failure to make a $5,000 payment on or before July 15, 2006 and to cure that payment default during the cure period, as well as her failure to pay the full August payment and any of the September payment. Since the agreed consequence of default of the Stipulation was relief from the automatic stay in favor of Bank, relief was mandated since the Stipulation was a binding agreement which must be enforced according to its terms.[5]

---

[4] Debtor did not appear at the first scheduled hearing and the stay was retained to allow her to testify at the later hearing.

[5] As I stated therein:

It is well settled that stipulations between the parties in settlement of litigation are favored by the law and should not be lightly set aside. Waldorf v. Shuta, 142 F.3d 601, 616 (3rd Cir.1998); In re Robinson, 2004 WL 2495406 (Bankr. E.D. Pa. Oct. 18, 2004). Stipulated agreements avoid costly and time-consuming litigation. In re Buzzworm, Inc., 178 B.R. 503, 512 (Bankr. D. Co. 1994). In contested matters similar to the case at bar, stipulations have long been entered into and enforced to settle relief from stay motions. In re Wald, 211 B.R. 359 (Bankr. D. N.D. 1997). The failure to enforce them undermines the willingness of parties to enter into future agreements, which inevitably impacts the prompt and efficient administration of bankruptcy cases. As noted by the Court in Wald, "'if [debtors] can remake the terms of their stipulations, especially default provisions, such agreements could fall into disfavor, significantly complicating the process of negotiating consensual plan provisions and confirmation proceedings.'" Id. at 361 (*quoting* In re Burrows, 1995 WL 42398, at *3 (Bankr. D. Idaho January 26, 1995)). Therefore, unless a stipulation has not been entered into voluntarily, or its terms violate public policy, or other extenuating circumstances exist, a court will enforce the clear terms of a stipulation of the parties previously approved by the court at the request of the

(continued...)

One week after the Ruling, Jennifer filed a motion to reinstate the stay ("Reinstatement Motion") contending that the Ruling was premised on the assumption that she could not cure the Stipulation payments and she alleged that she had by then done so. After a hearing on this new motion, I took the matter under advisement as trial of the Adversary Case was imminent. Bank took no actions to enforce its state law remedies while the Adversary Case was pending. After a protracted briefing period, the Adversary Case was decided adversely to Jennifer and Mark on April 3, 2007, and Bank moved forward with a motion for summary judgment in its state court foreclosure action. With no stay in effect in Jennifer's Case, Mark filed his own Chapter 13 case on June 1, 2007 to enjoin the continuation of that litigation.[6] This Motion seeking dismissal on the ground of bad faith was promptly filed on June 15, 2007.

As noted above, Mark has filed a Schedule I in his case that is identical to that filed in Jennifer's Case over one year ago. However, the couple's expenses are shown as reduced

---

(...continued)
      parties. In re Sando, 30 B.R. 474, 477 (E.D. Pa. 1983); Sellersville Savings and Loan Association v. Kelly, 29 B.R. 1016,1018 (E.D. Pa. 1983); Wald, 211 B.R. at 361.

2006 WL 2847364, at *3. I found none of the exceptions to the enforceability of the Stipulation were applicable.

[6] As the Reinstatement Motion had not been decided, Mark's counsel (also Jennifer's counsel) stated that he had no other option to protect the Residence. While I do not agree that a new case was the only option since a call to the Court when Bank filed its motion for summary judgment would have prompted a ruling before the summary judgment motion would have required action. Nor do I agree that the long pendency of the Reinstatement Motion "indicates, at the least, that there is a substantial dispute as to which the stay should be reinstated." "Answer to Motion ¶3. In fact, the pending Reinstatement Motion, contemporaneously and easily decided with this Motion, had been overlooked. However, counsel, not having made inquiry, did not know that.

which allows $48.27 in disposable income after a $500 monthly allocation for Jennifer's trustee payment. His Chapter 13 plan proposes a $40 trustee payment for 40 months but the only claims that are to be paid are his attorney's fees and the Trustee's commission. Exhibit M-1. Based on the foregoing, Bank argues that the Chapter 13 case has no purpose but to stay Bank's exercise of its state law remedies. Mark's counsel acknowledges that Mark's Case as filed has no other purpose but contends that if the stay is not reimposed in Jennifer's Case, he will use this case as a vehicle to cure the mortgage arrears.[7] As I interpret his position, if the stay is not reimposed in Jennifer's Case, she will stop making payments to the Chapter 13 trustee to elicit dismissal. Mark will then amend his Schedule J to delete the $500 payment and increase his Chapter 13 plan by a like amount. Bank contends this is bad faith. I agree.

**DISCUSSION**

Section 1307(c) provides that Chapter 13 petitions may be dismissed "for cause." 11 U.S.C. § 1307(c). In In re Lilley, 91 F.3d 491, 496 (3d Cir. 1996), the Third Circuit held that a debtor's lack of good faith in filing is sufficient cause for dismissal under § 1307(c). Because the term "good faith" is "incapable of precise definition," the good faith inquiry is a fact intensive determination that is left to the discretion of the bankruptcy court. Id.

---

[7] He contends that these mortgagors should have more than one chance at curing their mortgage. If Jennifer fails, Mark should now have a chance. By Order this same date, I have refused to reinstate the stay in Jennifer's Case. Thus, the strategy Mark seeks to employ is ripe for consideration.

The good faith of Chapter 13 filings is "assessed on a case-by-case in light of the totality of the circumstances." Id. To assist the bankruptcy court in its review, the following factors have been identified by the Third Circuit to be among those relevant to the inquiry:

> the nature of the debt ...; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors.

Id. (*quoting* In re Love, 957 F.2d 1350, 1357 (7th Cir. 1992)). See also Eisen v. Curry (In re Eisen), 14 F.3d 469, 470 (9th Cir. 1994) (*quoting* In re Goeb), 675 F.2d 1386, 1391 (9th Cir. 1982)) (whether the debtor "misrepresented facts in his [petition or] plan, unfairly manipulated the Bankruptcy Code or otherwise [filed] his Chapter 13 [petition or] plan in an inequitable manner.").

A debtor's history of filings and dismissals is probative of bad faith. In re Oglesby, 158 B.R. 602 (E.D. Pa. 1993).[8] While there is no per se rule against serial filings,

---

[8] Recognizing that there is no one established set of good faith factors, the Oglesby Court provides a non-exhaustive list of considerations to be utilized in measuring the good faith of multiple filings:

(1) the length of time between the prior cases and the present one;
(2) whether the successive cases were filed to obtain favorable treatment afforded by the automatic stay;
(3) the effort made to comply with prior case plans;
(4) the fact that Congress intended the debtor to achieve its goals in a single case;
(5) any other facts the court finds relevant relating to the debtor's purpose in making successive filings.

Id. at 607. Where two cases seeking the same outcome overlap and the second is commenced to secure renewed protection of the automatic stay lost through vigorous litigation, the Oglesby factors support a finding of bad faith.

see <u>Johnson v. Home State Bank</u>, 501 U.S. 78, 87-88, 111 S.Ct 2150, 2156 (1991),[9] where the subsequent case is a mere continuation of the prior case and is filed solely to circumvent an adverse ruling by the court, bad faith is implicated.  The fact that the successive case is filed by a spouse does not require a different outcome.  It is has been long recognized that the actions of a family member can be imputed to the rest of the family where there is unity of interest and concert of action.  <u>In re Kinney</u>, 51 B.R. 840, 845 (Bankr. C.D. Cal. 1985).  Where, as here, two spouses are co-mortgagors and the sole objective of the bankruptcy is to protect the jointly owned and occupied residence from foreclosure, a unity of interest and concert of action exists.

Finally, I have often concluded that "where the purpose of the bankruptcy filing is to defeat state court litigation without a reorganization purpose, bad faith exists." <u>In re Dami</u>, 172 B.R. 6, 10 (Bankr. E.D. Pa. 1994).  Mark's petition was filed because relief from stay had been granted in Jennifer's Case.  Notwithstanding the pending Reinstatement Motion, Jennifer was clearly in default of the Stipulation and there were no grounds for it to be reimposed as I have now ruled.  As the string had all but run out in her case, it now became Mark's turn.  Mark's debts, however, are identical to Jennifer's and his Chapter 13 plan simply would pick up where hers left off.[10]  After being restrained for over two years in

---

[9] A genuine change of circumstances may warrant further bankruptcy relief.  <u>See</u> <u>In re Oglesby</u>, 158 B.R. at 606 (*citing* <u>In re Metz</u>, 820 F.2d 1495, 1498 (9th Cir. 1987)).

[10] While no Chapter 13 plan has been filed providing for Bank's arrears (Mark rather incorporating Jennifer's plan payment as his expense), the Bank could be treated less favorably in this new case.  The post-petition arrears existing on June 6, 2006 when the First Relief Motion was filed in Jennofer's Case still have not been not paid.  In Mark's case, they are a pre-petition (continued...)

Jennifer's Case and prevailing on every contested matter brought before me, Bank would again be held hostage under the same facts and circumstances. Jennifer's Plan was confirmed as part of a global resolution with Bank. For her to walk away now, only to gain continued protection by substituting her husband as debtor is neither fair nor equitable.

Application of the Lilley factors to the instant case dictates that this case should be dismissed as a bad faith filing. Jennifer and Mark Glauser have had sufficient time to reach a bankruptcy accord with Bank, the sole object of their petitions. They did not cure post-petition defaults after being granted some grace to do so in Jennifer's Case nor are they prepared to do so today. In short, Jennifer and Mark have had more than one chance to cure their mortgage. They, not she, have failed, and they, not he, will not be given another chance.

Finally Bank requests that I award $1,210, reflecting the cost of filing this Motion, as sanctions against Debtor. I may do so on my own initiative or on motion of a party.[11] Fed.R.Bankr.P. 9011(1). I am not inclined to do so in this case for the simple reason that the status of the stay was in limbo by reason of the deferred resolution of the Reinstatement Motion. Neither party called it to the Court's attention. Having failed to do so, it was not

---

(...continued)
obligation which he would be permitted to cure over the life of his plan. Jennifer and Mark have had the benefit of the Stipulation. To allow Mark to circumvent the agreement with Bank by filing his own case would be extremely unfair.

[11] The procedure for a party to seek sanctions under Fed.R.Bankr.P. 9011 is set forth in subsection (c)(1) and requires a separate motion which describes the specific conduct that violates subsection (b). The incorporation of the request for sanctions in the Motion does not comply with the Rule. However, since sanctions can be awarded also on the court's initiative, I will address the request.

timely decided. Jennifer could persuade herself that she was entitled to the stay, see n. 6 supra, and that she had no option but to find another means of protecting the Residence. Had I rendered my ruling denying the Reinstatement Motion prior to the filing of Mark's Case, I might find the award of costs entirely proper.

An Order consistent with this Memorandum Opinion shall issue.

        DIANE WEISS SIGMUND
        Chief U.S. Bankruptcy Judge

Dated:  August 1, 2007

# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| MARK D. GLAUSER, | : | Bankruptcy No. 07-13165DWS |
| | : | |
| Debtor. | : | |

# ORDER

**AND NOW**, this 1st day of August 2007, upon consideration of the Motion of Deutsche Bank National Trust Company ("Bank") to Dismiss (the "Motion") the Chapter 13 case of the debtor Mark Glauser, after notice and hearing and for the reasons stated in the accompanying Memorandum Opinion;

It is hereby **ORDERED** that:

1. Bank's Motion is **GRANTED in Part**;

2. The Chapter 13 case of Mark Glauser is **DISMISSED**;

3. Bank's request for sanctions under Fed.R.Bank.P. 9011 is **DENIED**.

DIANE WEISS SIGMUND<br>
Chief U.S. Bankruptcy Judge